No. 8906.

JULESBURG IRRIGATION DISTRICT v. HARMONY DITCH COMPANY ET AL.

CONTRACTS—*Construed.* The Harmony Land Company being the owner of the Harmony canal and certain lands irrigated therefrom, entered into a contract, in which one Camfield was party of the first part, the Land Company party of the second part, and the Julesburg Irrigation District party of the third part.

The agreement provided that Camfield should enlarge and lengthen the ditch for the benefit of the District, and that the Land company on completion of the work, would convey to him such

right in the canal as he would have secured by condemnation proceedings, but that the award of 252 second feet, priority which had been decreed to the Land Company, should remain, unimpaired, as the property of that company.

The contract containing provision to the effect that the Land Company was entitled to the use of the water decreed to it whenever that volume was required, "for direct irrigation of the lands now owned, or that may hereafter be acquired," by it, and should be entitled "to draw water from any part of the canal for direct irrigation, west of a specified section line; that the land company should be limited to one hundred feet, after reaching a certain other section line, and fifty feet after passing the line of still another section, and that for all other purposes Camfield should have the prior right to divert water through the canal for storage . . . particularly in the Julesburg reservoir."

The Land Company agreed to convey a right of way over its lands for the enlargement, but with the reservation that in the conveyances, it should "reserve to itself . . . the appropriation and priority of said Harmony canal to the extent of 252 cubic feet per second of time" and "a perpetual easement" for carrying through the canal, "all the water covered by said priority;" and it was "expressly understood" that, "regardless of any conveyance of the canal" "the right to water . . . for irrigation," should be "enjoyed by said party of the second part, as heretofore."

Held that the Land Company retained without limitation or abridgement the priority which had been decreed to it. Standing prior to the above provision last quoted, there was a provision that the Land Company "has the prior right of storage . . . only for the purpose above described," and that for all other purposes Camfield and his assigns should "have the prior right to divert water through said canal for storage." *Held* not a conveyance nor an agreement to convey any part of the Land Company's decreed priority.

*Error to Logan District Court, Hon. H. P. Burke, Judge.*

Mr. H. N. HAYNES, Mr. C. M. ROLFSON, Mr. H. D. ROBERTS, for plaintiff in error.

Messrs. ALLEN & WEBSTER, for defendants in error.

Mr. Justice Bailey delivered the opinion of the court:

THE case is here to review an order sustaining a demurrer to the complaint of The Julesburg Irrigation District against The Harmony Ditch Company and others. Defendants elected to stand by their complaint, and a judgment of dismissal was entered. We designate the parties as they appeared in the court below.

The issues arise out of a tri-party contract entered into between one Camfield, The Julesburg Irrigation District and The Harmony Land & Stock Company, regarding the enlargement of a ditch in the Julesburg Irrigation District. The ditch was the property of The Harmony Land & Stock Company, and carried a decreed water right of 252 second feet for irrigation purposes. Camfield, a contractor, first party to the contract, agreed with the owner of the water right, party of the second part, to enlarge and lengthen its ditch, for the benefit and use of The Julesburg Irrigation District, party of the third part. Among other things, the contract provides that the owning company should pay Camfield or his assigns $500.00 per year as a maintenance charge, reserving the first right to the use of such decreed right. By the express terms of the contract the priority and right to use was reserved by The Harmony Land & Stock Company, regardless of any transfer of the canal, or of any right thereto, such right of priority and use to remain in and be enjoyed by the owning company as theretofore. Also that when Camfield should complete the work, The Harmony Land & Stock Company should then convey to him such right, title and interest in the canal as he would have secured in it by condemnation proceedings, but that the decree of 252 cubic feet of water per second of time should remain unimpaired as the property of The Harmony Land & Stock Company, and also that all covenants and agreements to be performed by the first and third parties thereto should extend to and be enjoyed by the successors and assigns of such company.

The work was completed and transfers made according to agreement. Later the lands owned by The Harmony Land & Stock Company were sold to others, and the rights

of the company under the enlarged ditch were conveyed to a corporation, The Harmony Ditch Company, one of the defendants herein, the stock of which is divided into 1,250 shares, each share carrying the right to water from the enlarged ditch for ten acres of land.

It is contended by plaintiff that by the terms of the contract The Harmony Land & Stock Company was limited to the use of water upon its lands lying west of a certain boundary line, approximately 5,000 acres, and also that it had the right to use only so much of its priority upon such lands as was sufficient to properly irrigate them, and none other, and in case of a surplus or excess of water for such use, such excess was to go to the plaintiff. This theory is based upon that part of section 8 of the contract which reads as follows:

"It is further mutually understood and agreed that the said party of the second part has the right to the use of 252 cubic feet of water per second of time whenever said amount is required for the use of said party of the second part for direct irrigation of the lands now owned, or that may be hereafter acquired by the said party of the second part, lying under the line of said Harmony No. 1 and Julesburg Extension Canal, as herein provided, whenever said water is turned into said canal at the point of intake from the river or by feeders, and the said party of the second part shall have the right at all times to the carriage and to draw water from any part of said canal for direct irrigation as aforesaid, west of the section line running north and south between sections 21 and 22-11-48."

After providing that the right of the land company to the water shall be limited to 100 feet after reaching the center line of section 2-10-49, and to 50 feet after passing section line 22-11-48, and for rights of the land company to store water, the contract continues as follows:

"And that for all other purposes said party of the first part and his assigns shall have the prior right to divert water through said canal from the South Platte River for storage purposes, and particularly for the purpose of stor-

age in the Julesburg reservoir belonging to the party of the first part."

Defendants contend that the above clauses of the contract refer only to the points at which water may be drawn from the canal for direct irrigation, and not to the location of the land upon which it may be used, and that the restrictions apply only to water for storage purposes. They claim that the land company conveyed to the district only such right in the ditch as the district might have secured by condemnation proceedings, and in support of their position rely on the following provision of the contract:

"The said party of the second part will, at the request of the said party of the third part, in writing, and subject to all construction claims, convey to the said party of the first part, to-wit, (1) such right, title and interest in and to the said Harmony Canal No. 1 as the said party of the first part would acquire in it, in its present condition, by reason of condemnation proceedings brought to enlarge the same for his use."

The land company agrees to convey a right of way over its lands for the enlarged canal, and then a reservation is made by the contract in these words:

"And it is expressly understood and agreed that in said conveyances the party of the second part shall reserve for itself the ownership of the appropriation and priority of said Harmony Canal No. 1 to the extent of 252 cubic feet of water per second of time, and a perpetual casement of carrying and having delivered through the same all the water covered by said appropriation and priority, to the end that the decree of 252 cubic feet of water per second of time of the said Harmony Canal No. 1 shall remain unimpaired as the property of the said party of the second part, it being expressly understood, regardless of any transfer or conveyance of said canal, and the joint use thereof, the right to water from the South Platte River for irrigation shall be enjoyed by the said party of the second part as heretofore, and that the said party of the second part

shall have and enjoy a senior appropriation for storage as herein limited."

If the theory of plaintiff is correct, it must be because the contract between The Harmony Land & Stock Company and Camfield restricts the use of the water to lands owned and irrigated by that company before the contract was made; or else that, by the contract, such company conveyed a portion of its priority to Camfield, and the district as the successor of Camfield. The restrictions, if any, consist solely in confining the use as above indicated. It is claimed that the use is limited by the clause, "for the irrigation of the lands now owned by the party of the second part, or hereafter acquired by said party of the second part." This provision read in connection with other parts of the contract, wherein are precisely defined and set what the company agrees to convey, must be regarded as defining the right, rather than as a limitation upon it. This provision not only does not limit the right, but is a definite expression of an unlimited right. The language to the effect that the company retains the right to the use of the water, "as heretofore," is indicative of an intent to retain all rights, unlimited and unabridged, under the priority. To hold that by the language quoted the company intended to restrict itself in the use of water under its priority is contrary to reason, or logical construction. In fact, there seems to be nothing whatever in the contract which even suggests a restriction of the use of this right for direct irrigation; the only possible limitation is upon the distance the water shall be carried, as indicated by this language of the contract:

"And said party of the second part shall have the right at all times to the carriage and to draw water from any part of said canal for direct irrigation, as aforesaid, west of the section line running north and south between sections 21 and 22-11-14; provided, that no more than one hundred cubic feet of water per second of time shall be carried in said canal from the north and south center line of section 2-10-49 eastwardly to the main lateral east of said section,

and no more than fifty cubic feet per second eastwardly from such point, for said purposes."

The second hypothesis, that the land company conveyed a part of its priority to the district, is based upon that section of the contract which, after providing for the use of water for storage by the parties, and limiting the location of reservoirs to certain positions, is as follows:

"It being expressly understood and agreed between the parties hereto that the said party of the second part has the prior right of storage from the South Platte River as among the parties hereto, only for the purpose above described, and for all other purposes said party of the first part and his assigns shall have the prior right to divert water through said canal from the South Platte River for storage purposes."

That the above section refers only to the acknowledged limitation for storage purposes is clear from the fact that in the following section is the provision relating to the right which the company agrees to convey, quoted above, reserving all rights in the priority for direct irrigation. The contract, read as a whole, contains nothing which can fairly be construed as limiting the company in any way in the use of water under its priority for direct irrigation, except the provisions relating to diminished amounts to be drawn from the ditch upon increased distances from the intake thereof, and the limitation for storage purposes as above set out.

There is no merit whatever in the contention that the land company could not sell its lands, and convey its rights under the priority to other persons.

No error appearing in the record the judgment of the trial court is affirmed.

*Judgment affirmed.*

Mr. Chief Justice Hill and Mr. Justice Allen concur.